UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

LAMONTE CHERRY,

                Petitioner,

    -against-

GARY A. FILLION,[1]

               Respondent.

------------------------------------X

**REPORT AND RECOMMENDATION**
01-CV-8240 (DGT)(LB)

**LOIS BLOOM, United States Magistrate Judge**:

    The Honorable David G. Trager, United States District Judge, referred this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, I respectfully recommend that the petition should be denied.

## FACTUAL BACKGROUND

    Petitioner challenges his November 20, 1997 conviction in New York Supreme Court, Kings County, of manslaughter in the first degree and criminal possession of a weapon in the second degree. Petitioner, an eighteen-year-old heroin dealer, shot and killed Byron

---

[1]While petitioner remains in state custody, he is currently incarcerated at Elmira Correctional Facility, where Calvin E. West is the Superintendent. The Clerk of Court is directed to amend the docket sheet to reflect petitioner's present address: Elmira Correctional Facility
Box 500, Elmira, New York 14902.

1



Hollingsworth ("Hollingsworth") on October 2, 1995. Earlier that day, Hollingsworth accused petitioner and another drug dealer of stealing five hundred dollars from him. That evening, on the street in front of the apartment building where they were dealing drugs, petitioner, the other dealer and Hollingsworth had a fist fight. During the fist fight, Hollingsworth's concealed gun fell to the ground and petitioner picked it up. As Hollingsworth approached him, petitioner fired four shots, three of which hit Hollingsworth, killing him instantly. Petitioner left the scene and was arrested over a year later at a relative's home in Nassau County. Petitioner's statements to the police admitted that he had shot and killed Hollingsworth.

*Pretrial Hearings*

At a Wade/Huntley/Dunaway hearing,[2] the trial court denied defendant's motions finding that (1) the police had consent to enter the home in which petitioner was arrested; (2) the photo array was properly shown to the witnesses who identified petitioner; (3) the photo array was not unduly suggestive; and, (4) petitioner's oral, written and video statements were admissible at trial since petitioner was advised of his Miranda rights and the statements were voluntary. (H.T. 163-164).[3]

*Trial*

Petitioner was charged with criminal possession of a weapon and second degree murder.

---

[2] A Wade hearing is held to determine whether the pretrial identification procedure was unduly suggestive. United States v. Wade, 388 U.S. 218 (1967). A Huntley hearing is held to determine whether a defendant's confession was voluntary. People v. Huntley, 15 N.Y.2d 72 (1965). A Dunaway hearing is held to determine whether a suspect's arrest was proper under the Fourth Amendment. Dunaway v. New York, 442 U.S. 200, 214-16 (1979).

[3] "H.T." refers to pages of the Wade/Huntley/Dunaway hearing transcript. "Tr. __" refers to pages of the trial transcript. "S. __" refers to pages of the sentencing transcript.

Petitioner maintained that he shot Hollingsworth in self-defense.

The prosecution called the following witnesses: Hollingsworth's brother, a New York City Police Department detective, who identified his brother at the scene of the shooting and at the morgue the following day and who testified that witnesses at the scene of the shooting stated that petitioner was the shooter (T. 42-55); the police officer who arrived shortly after he heard shots from a few blocks away, but found Hollingsworth already dead (T. 56-79); the detective who arrived approximately one hour after the shooting (T. 81-105); Hollingsworth's girlfriend, Sonia Brown, who assisted him in his drug dealing (T. 108-153); Valerie Robeson, a 26-year heroin addict who witnessed the shooting from a nearby park bench as she consumed the heroin she had just purchased (T. 164-203); Terence Rush, a convicted felon and former heroin customer of petitioner's who, in exchange for a promise of a reduced sentence on a pending charge, testified that when he was at the building to buy heroin on the evening of the shooting, he saw petitioner, Hollingsworth and a third person scuffling (but left before the shooting) and later that night provided petitioner with a ride to the subway station during which petitioner admitted to killing Hollingsworth (T. 213-294); a ballistics expert who testified that two of the three bullets extracted from Hollingsworth came from the same gun and the third could not be positively identified (T. 295-307); the medical examiner who testified that Hollingsworth was not shot at close range (T. 314-327); and finally, a detective from the Cold Case Squad, who assisted in the arrest of petitioner at a Long Island home on the night of December 4, 1996. (T. 337-376). Several witnesses testified that two rival heroin operations were dealing out of the lobby at 466 Madison Street and that a gun was stored in a mailbox in the lobby for Hollingsworth and those working for him to use. (T. 145, 169, 232). While police officials

testified at the pretrial hearing that two witnesses identified petitioner from a photo array (one of whom was the other dealer Hollingsworth accused of stealing money and who was involved in the fight on the night of the shooting), neither of these witnesses testified at trial.

The defense called two witnesses, Detective Ramirez and petitioner. Detective Ramirez testified that Terence Rush had made a statement to the police in November 1995 which was at odds with his testimony at trial. Ramirez testified that Rush had stated that he gave petitioner a ride to the subway in exchange for heroin at one a.m., not ten p.m., as he testified at trial, and that petitioner had told Rush that he "had to shoot" Hollingsworth. (T. 377-386).

Petitioner testified about his move to 466 Madison, how he started selling heroin for and became involved with Hollingsworth. (T. 397-404). Petitioner did not deny that he shot Hollingsworth; rather, his testimony concerned his justification for shooting him. Petitioner testified that he shot Hollingsworth in self-defense. He testified that Hollingsworth was known to have a fiery temper, especially when drinking as he was on the evening of the shooting. (T. 407, 415-16, 418-19). Petitioner testified that Hollingsworth had injured others in petitioner's presence and threatened petitioner earlier in the evening of the shooting because he believed petitioner had stolen five hundred dollars from him. (T. 409-413, 421). Petitioner testified that when Hollingsworth accused him of stealing the money, he stated "somebody's son is going to die tonight." (T. 413).

Petitioner also testified that each of his three brothers had been shot during his lifetime. When petitioner was about eight years old, his older brother Ronnie was shot in the face outside their home in Harlem. (T. 390-92). Petitioner was home when Ronnie came banging on the door and he saw "the hole in [Ronnie's] face where he got shot." (T. 392-93). About two years later,

4

his brother Tico was shot in his legs and hand outside a hotel in Manhattan. (T. 393-94). Petitioner was concerned that his brother would never walk again and his brother thought his life was over. (T. 394-95). His third brother was shot to death, three times in the head and three times in the chest, in a dispute over a girlfriend. (T. 395-396).

Petitioner testified that he began working for Hollingsworth after his family moved to 466 Madison Street, at first retrieving money or drugs from Sonia Brown, and later selling heroin. (T. 399-405). On the evening of October 2, 1995, he left his home shortly after being accused of stealing five hundred dollars by Hollingsworth. He returned home approximately two hours later, spoke briefly to Hollingsworth, went to his apartment, then approached Hollingsworth on the sidewalk outside the building. Petitioner testified that Hollingsworth threw a liquor bottle at him, grabbed him and punched him in the face. (T. 421-23). A violent fist fight ensued, petitioner's coworker entered the fight, they bumped against a car, Hollingsworth dropped a gun on the ground and petitioner picked it up. (T. 421-25). Petitioner testified that Hollingsworth came at him and he believed Hollingsworth was reaching for another gun when he shot him. (Tr. 425-26).

On cross-examination, petitioner testified that he was frequently absent from school, had misrepresented the name of the school he had attended, and admitted he was incorrect about when he had met Hollingsworth because Hollingsworth was incarcerated until 1994 and petitioner had testified that they had met in 1992. (T. 464-67, 469). Petitioner was approximately eight, ten and thirteen years old when his brothers were shot; he was eighteen when he shot Hollingsworth. (T. 389, 523).

While the jury determined that the prosecution satisfied its burden of proof that the

defendant was not justified in the homicide of Hollingsworth, it accepted the affirmative defense of extreme emotional disturbance which reduced petitioner's conviction from second degree murder to manslaughter in the first degree. The jury also found petitioner guilty of criminal possession of a weapon in the second degree. (T. 710).

## PROCEDURAL HISTORY

Petitioner was convicted on October 29, 1997. On November 20, 1997, the trial court sentenced petitioner to twelve and one-half to twenty-five years imprisonment for the manslaughter conviction, and a concurrent term of seven and one-half to fifteen years for the criminal possession of a weapon conviction. (T. 710; S 10-11). By decision and order dated September 25, 2000, the Appellate Division, Second Department, affirmed the conviction. People v. Cherry, 275 A.D.2d 796, 714 N.Y.S.2d 221 (2000). By order dated December 29, 2000, the New York Court of Appeals denied petitioner's application for leave to appeal. People v. Cherry, 95 N.Y.2d 962, 745 N.E.2d 399, 722 N.Y.S. 2d 479 (2000).

On December 4, 2001, petitioner filed the instant petition *pro se* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner filed an amended petition on September 9, 2002 and respondent's affirmation in opposition was filed March 13, 2003. On April 23, 2003, the Court granted petitioner's request to stay the petition pending the conclusion of state collateral proceedings challenging the legality of petitioner's sentence, and directed petitioner to move to reopen the case within thirty days of the conclusion of the state court proceedings. When petitioner sought to amend his petition in September 2003, the Court directed petitioner to submit his second amended petition by October 31, 2003. When petitioner failed to do so, the

Court directed him to file a traverse by August 20, 2004 or the petition would be adjudicated as submitted. By letter dated August 17, 2004, petitioner informed the Court that he would proceed with his petition as submitted since his repeated requests for trial transcripts were denied by the Court.[4]

The instant petition raises the following grounds: (1) that petitioner's guilt was not proven beyond a reasonable doubt because the prosecution failed to disprove that he acted in self-defense and the verdict was against the weight of evidence; (2) the testimony of the prosecution witnesses was "contrary to logic and normal human experience;" (3) the court's reasonable doubt charge reversed the burden of proof; (4) his sentence was excessive; and, (5) the cumulative effect of the errors at trial requires reversal. Amended Petition ("A.P.") at 6-23.[5]

## DISCUSSION

### I. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") sets forth the standard of review for habeas corpus petitions. For claims that have been fully adjudicated on the merits in state court, a petitioner must show that the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4]Petitioner's letter alleges that he was improperly sentenced without a pre-sentence report and that, had he been granted access to his transcripts, he would have raised ineffective assistance of counsel claims regarding his trial and appellate attorneys.

[5]The Court has numbered the pages of the Amended Petition.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.§ 2254(d); see Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (*per curiam*) (holding that habeas relief is warranted "only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent") (emphasis in original).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is an unreasonable application of Federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Williams further held that the reasonableness of the application of the law should be scrutinized objectively and also pointed out that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ, there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

Great deference is given to state courts concerning the determination of factual issues

8

which "shall be presumed to be correct." The petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. Petitioner's Claims

### A. Insufficient Evidence and Weight of the Evidence Claims

Petitioner's first two claims: (1) that the prosecution failed to disprove his defense of justification, and (2) that the "testimony given by the prosecution witnesses was so unreliable and contrary to logic and normal human experience as to render [the] verdict against the weight of the credible evidence" were folded into one claim by the appellate court and denied as unpreserved: "The defendant's contention that the evidence was legally insufficient to disprove his defense of justification is unpreserved for appellate review." People v. Cherry, 275 A.D. 2d 796, 714 N.Y.S. 2d 221 (2d Dep't 2000). The state court alternatively ruled on the merits of petitioner's legal sufficiency claim stating: "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence." Id. (citations omitted).

While respondent argued on appeal that the issue was unpreserved, Respondent's Appellate Court Brief at 14 ("defendant asked for permission to reserve his motions for later and then never made any"), and the appellate court ruled that the claims were unpreserved, petitioner's counsel did move to dismiss at trial on the grounds that the prosecution had "failed to make out the essential elements as charged in the indictment." (T. 633-34). Since these claims were mischaracterized as unpreserved, this Court will address the merits of these claims.

1. Sufficiency of the Evidence

9

Petitioner argues that the prosecution failed to disprove beyond a reasonable doubt that petitioner shot Hollingsworth in self-defense. The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." In re Winship, 397 U.S. 358, 364 (1970). A state criminal conviction will be upheld if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Einaugler v. Supreme Court of State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (habeas corpus relief is only available if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt). "[I]n making this assessment, a court may neither disturb the jury's findings with respect to witnesses' credibility, nor make credibility judgments about the testimony presented at petitioner's trial or weigh conflicting testimony." Calderon v. Artuz, No. 97 Civ. 1965, 2001 WL 135741, at *5 (E.DN.Y. Jan. 31, 2001) (internal citations and quotations omitted); accord, Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996); Fagon v. Bara, 717 F. Supp. 976, 979-80 (E.D.N.Y. 1989) ("this court is not free to make credibility judgments about the testimony . . . . or to weigh conflicting testimony."). "This standard applies with equal force to the sufficiency of proof as to a defense, such as justification under N.Y. Penal Law §§ 25.00 (1), 35.00 which the prosecution is required to disprove beyond a reasonable doubt." Ledesma v. Cunningham, No. 03 Civ. 6322, 2004 WL 1775677, at *11 (S.D.N.Y. Aug. 10, 2004) (citing Cross v. McGinnis, No. 03 Civ. 3411, 2003 WL 21812024, at *6 (E.D.N.Y. July 23, 2003)).

The prosecution had the burden to prove beyond a reasonable doubt that petitioner did not act in self-defense. Davis v. Stack, 270 F.3d 111, 124 (2d Cir. 2001). The justification defense has

an objective and subjective element: the fact-finder must determine that the defendant believed deadly physical force was necessary and that a reasonable person would have believed the use of deadly physical force was necessary under the same circumstances. In re Y.K., 87 N.Y. 2d 430, 433, 639 N.Y.S.2d 1001, 663 N.E.2d 313 (1996). New York law also imposes a duty to retreat in some circumstances: if a defendant who is confronted with deadly physical force knows he can retreat with complete safety but fails to do so, the justification defense is lost. See id. at 434; N.Y. Penal Law § 35.15(2)(a). The jury was instructed on both the prosecution's burden of proof and self-defense. (T. 670-676).

Petitioner does not establish that the evidence was insufficient to convict him or that the prosecution failed to disprove self-defense. This is a situation in which a jury could have found, and apparently did find, that "the combination of many small pieces of valid evidence--each of which [was] established 'more probably than not' " was adequate, in sum, to establish the elements of the crime beyond a reasonable doubt. United States v. Martinez, 54 F.3d 1040, 1045 (2d Cir. 1995) (Calabresi, J., concurring).

It is undisputed that petitioner used "deadly force" against Hollingsworth. The jury could have found that petitioner was not justified in using deadly force if they found that the prosecution had proven any of the following facts beyond a reasonable doubt: (1) petitioner could have retreated to safety once he recovered Hollingsworth's gun; (2) petitioner did not believe that deadly physical force was necessary to defend himself; (3) petitioner did not **reasonably** believe that Hollingswoth was using or about to use deadly physical force against him (emphasis supplied); (4) petitioner was the aggressor and the one who was armed (crediting Valerie Robeson who testified that she saw petitioner point a gun at Hollingsworth and then heard shots).

After a thorough review of the record and viewing the evidence in the light most favorable

11

to the prosecution as I must, the state court's decision was not contrary to or an unreasonable application of clearly developed Federal law. On October 2, 1995, petitioner returned to his home at 466 Madison Street approximately two hours after he was accused by Hollingsworth of shortchanging him of five hundred dollars of heroin sale proceeds. Petitioner went to his apartment and then approached Hollingsworth in front of the building to discuss the missing money. A fight ensued. When a gun fell to the ground, plaintiff picked it up and fired several fatal shots at Hollingsworth and then fled the scene. Although it did not find petitioner had acted in self-defense, the jury found petitioner was acting under extreme emotional disturbance when he shot Hollingsworth. It is not for this Court to supplant the jury's assessment of the evidence.[6] Therefore, petitioner is not entitled to *habeas corpus* relief on this claim.

2. Weight of the Evidence

Petitioner also raises a weight of the evidence claim, i.e. that "the testimony given by the prosecution witnesses was so unreliable and contrary to logic and normal human experience as to render[] [the] verdict against the weight of the credible evidence." A.P. at 3. However, this Court has no authority to grant habeas relief on this ground because a weight of the evidence argument is a state law claim. 28 U.S.C. § 2254 (permitting habeas corpus review only where petitioner has alleged that he is in state law custody in violation of "the Constitution or a federal law or treaty"); See Lemons v. Parrott, No. 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) (no authority to review a weight of the evidence argument because it is a state law claim, nonetheless

---

[6] While petitioner's trial featured an assortment of heroin dealers, heroin users, and convicted felons whose credibility was certainly suspect, the jury's assessment of their credibility may not be impugned by this Court. Many of the witnesses, including petitioner, gave contradictory testimony and were motivated to testify by self-interest. For example, Valerie Robeson, a heroin addict, is likely still a customer of the heroin dealers in the neighborhood, but the crux of her testimony, that petitioner shot Hollingsworth, is not in dispute.

liberally construing a weight of the evidence claim as an insufficiency of the evidence claim); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (" 'weight of the evidence' argument is purely a state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles"). Therefore, petitioner is not entitled to habeas relief on this claim.

### B. Reasonable Doubt Jury Charge

Petitioner claims that the trial court's reasonable doubt instruction impermissibly shifted the burden of proof to the defense. This claim is procedurally barred from review by this court. "Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000). In determining whether the state court relied on an adequate and independent state ground, the federal habeas court must look to the last state court to review the matter to determine whether it plainly stated its intention to decide the issue on state procedural grounds. Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000).

Here, the last state court to review this claim was the New York Supreme Court, Appellate Division, Second Department which denied the jury instruction claim stating that petitioner's "remaining contention is unpreserved for appellate review and is, in any event, without merit."[7]

---

[7]The Court presumes that the state court was addressing petitioner's jury charge claim because it was the only remaining claim before the state court which, under New York law, requires a contemporaneous objection at trial in order to be preserved for appeal. See Johnson v. LeFevre, No. 84 Civ.118, 1984 WL 625, *1 (S.D.N.Y. July 18, 1984) (Under New York law, objections to a jury charge must be made at trial, when the court still has the opportunity to correct any claimed errors. Failure to so object precludes appellate review of the allegedly improper jury instructions. (N.Y.C.P.L. § 470.05(2)).
While New York's Criminal Procedure Law § 470.15(6)(a) provides an exception to the contemporaneous objection rule (the intermediate appellate court has the discretionary power to

People v. Cherry, 275 A.D. 2d 796, 714 N.Y.S. 2d 221. The court's statement that the reasonable doubt jury charge claim was "unpreserved," decided the claim on an adequate and independent state ground. "The Second Circuit has made clear that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" Ferguson v. Walker, No. 00 Civ. 1356, 2002 WL 31246533, at *11 (S.D.N.Y. Oct. 7, 2002) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 2000)). The appellate court's alternative holding, does not avoid the application of the procedural bar doctrine. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" as long as it "explicitly invokes a state procedural bar rule as a separate basis for decision") (emphasis in original); Fama, 235 F.3d at 810, n. 4 ("where a state court says that a claim is 'not preserved for appellate review' and then rules 'in any event' on the merits, such a claim is not preserved"); accord, Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *12-13 (S.D.N.Y. Nov. 17, 1999) (decision by state court that claim was "unpreserved and without merit" bars habeas review); Santiago v. People of the State of New York, 97 Civ. 5076, 1998 WL 803414, at *4 (S.D.N.Y. Oct. 13, 1998) (same); compare DeBerry v. Portuondo, 403 F.3d 57, 64 (2d Cir. 2005) (reliance on an independent state procedural bar is not "clear from the face of the opinion" when a state appellate court dismisses a claim by saying, "the defendant's remaining contentions are either unpreserved for appellate review **or** without merit.") (citing Fama 235 F.3d at 811 ) (emphasis added).

Thus, the adequate and independent state ground doctrine bars federal habeas review of

---

review or modify a judgment 'in the interest of justice' even absent a contemporaneous objection at trial, if the claimed error deprived the defendant of a fair trial), the appellate court did not invoke the exception in this case.

petitioner's jury instruction claim. Because petitioner has failed to show cause and prejudice for the procedural default, Coleman v. Thompson, 501 U.S. 722, 749-50 (1991), or that failure to consider the federal claim will result in a fundamental miscarriage of justice, Murray v. Carrier, 477 U.S. 478, 495 (1986); Engle v. Isaac, 456 U.S. 107, 135 (1982), this claim should be dismissed as procedurally barred.

Moreover, even if this Court were to reach the merits of this claim, I would recommend that the claim should be denied. The trial court instructed the jury as follows:

> A reasonable doubt is a doubt based upon reason. It's a doubt for which a reason can be given. It's a doubt based upon the evidence or lack of evidence in the case.
> And a reasonable doubt has been defined as an actual doubt, a doubt that you are conscious of having after having going [sic] over in your mind the entire case and giving consideration to all of the testimony and every part of it.
> If you then feel uncertain and not convinced that the defendant is guilty, and if you believe that a reasonable person would hesitate to act because of such doubt that you are conscious of having, then that is a reasonable doubt.
> Now this doesn't mean that a reasonable doubt may be predicated upon some type of whim or guess or surmise or conjecture on the part of any juror, nor should it be considered as some type of bulwark behind which a juror might hide to avoid doing a painful or a disagreeable duty.
> I charge you, further, that there is no obligation on the part of the People to establish the elements of a crime of which a defendant may be charged beyond any and all doubt or to a mathematical certainty, because you can't get that degree of proof in human affairs.
> Human affairs depends [sic] upon the powers of observation, recollection and truthfulness of human beings, and all human beings are fallible.
> So you can't get proof to a mathematical certainty, but you can get proof beyond a reasonable doubt, and to that degree of proof the People must be held.

(T. 651-652). In the context of this trial which lasted five days, the instruction could not be said to have "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973) (In order to obtain a writ of habeas corpus based on an error

15

in the state court's instructions to the jury, petitioner must show that the error violated a right guaranteed by federal constitutional law. The relevant issue is not whether the instruction was "undesirable" or "erroneous," but rather "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."). Therefore, even if the Court reached the merits of this claim, it should be denied.

### C. Excessive Sentence

Since the state court addressed petitioner's claim that his sentence was excessive on the merits, the validity of that claim is preserved and is subject to review by this Court. Petitioner claims that his sentence is "harsh and excessive and an improvident exercise of [discretion]." A.P. at 3, 23. Here, petitioner's sentence was within the range prescribed by New York law.[8] N.Y. Penal Law § § 70.02 (1)(a)-(b), (3)(a)-(4). Accordingly, this claim does not present a federal question and must be dismissed. Dorsey v. Irvin, 56 F.3d 425, 427 (2d Cir. 1995); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (*per curiam*) (sentencing decisions are not cognizable on federal habeas review unless the sentence imposed falls outside the range prescribed by state law); Pretlow v. Lord, No. 03 Civ. 2547, 2005 WL 1073609, at *4 (E.D.N.Y. Apr. 29, 2005).

### D. Right to Fair Trial Denied by Cumulative Impact of Trial Errors

It is unclear what became of petitioner's fifth claim before the appellate court. On appeal, respondent failed to address petitioner's claim that the cumulative effect of the trial court errors requires reversal and the state court never explicitly addressed the claim. Did the state court intend

---

[8]Although petitioner does not challenge the laws under which he was sentenced, the Court notes that New York sentencing statutes were amended in 1995 and applied to crimes committed after October 1, 1995. N.Y. Penal Law (McKinney's 1995). Hollingsworth's shooting occurred on October 2, 1995 and petitioner's minimum sentence was thus properly calculated to be half the maximum indeterminate sentence under the amended statute. N.Y. Penal Law § 70.02(4).

to include both the jury charge and cumulative effect of the errors claims in the last sentence of the opinion, denying them as unpreserved? Or did the state court ignore this claim since there can be no cumulative effect of errors where no error has been found? The Court need not resolve this quandary because, even reviewing petitioner's claim on the merits, petitioner is not entitled to relief. See 28 U.S.C. § 2254(d); see generally Washington v. Schriver, 255 F.3d 45 (2d Cir. 2001) (discussing whether state court opinion that is silent as to the merits of a federal claim constitutes an "adjudicat[ion] on the merits" under the AEDPA); see also, Rudenko v. Costello, 286 F.3d 51, 69 (2d Cir. 2002) ("If it cannot be determined from the state-court opinion whether the denial of a given claim was based on a procedural ground rather than on the merits, no AEDPA deference is due the state-court decision on that claim.").

Habeas relief may be justified based on the cumulative effect of errors that, standing alone, would not warrant the granting of a new trial. Taylor v. Kentucky, 436 U.S. 478, 487-88 & n.15 (1978) ("the cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness."). But implicit in such a claim is, first, that the alleged individual errors a petitioner seeks to aggregate are actually errors. Cf. United States v. Lumpkin, 192 F.3d 280, 290 (2d Cir. 1999) (accumulation of non-errors does not warrant a new trial); United States v. Hurtado, 47 F.3d 577, 586 (2d Cir. 1995) (rejecting claim that the collective impact of alleged errors warranted a new trial where the court committed only one error which was not itself sufficient to warrant a new trial). In addition, the cumulative errors must be "so prejudicial that they rendered petitioner's trial [ ] fundamentally unfair." Collins v. Scully, 878 F. Supp. 452, 460 (E.D.N.Y. 1995). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990).

Petitioner is not entitled to habeas relief on this claim. As discussed above, even if petitioner

had preserved the jury instruction claim with a contemporaneous objection, the allegedly ailing reasonable doubt instruction did not so infect the trial that the resulting conviction violates due process; this court may not supplant the jury's assessment of the witnesses' credibility; petitioner has not established that upon the record evidence adduced at trial, no rational trier of fact could have found that his justification defense was disproved beyond a reasonable doubt; and petitioner's sentence was not excessive. Whether considered individually or cumulatively, petitioner has not demonstrated that the state court's decision is contrary to or an unreasonable application of clearly established Federal law. Therefore the instant petition should be denied.

## CONCLUSION

Accordingly, it is respectfully recommended that the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds*, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing standard for issuing certificate of appealability); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000). It is also recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a) that any *in forma pauperis* appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Any request for an extension of time to file objections must be made within the ten (10) day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: December 28, 2005
      Brooklyn, New York

Copies to:

HONORABLE DAVID G. TRAGER

LAMONTE CHERRY
Petitioner Pro Se
97-A-7540
Elmira Correctional Facility
Box 500
Elmira, New York 14902


SHULAMIT ROSENBLUM
Assistant District Attorney
Office of the District Attorney, Kings County
Renaissance Plaza
350 Jay Street
Brooklyn, NY 11201